UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:24-CV-00710-RSE

**ALSTON Z.**                                                                                           **PLAINTIFF**

**VS.**

**FRANK BISIGNANO,**
*Commissioner of Social Security*[1]                                                                    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

The Commissioner of Social Security denied Claimant Alston Z.'s ("Claimant's") application for disability insurance benefits and supplemental security income benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant filed a Fact and Law Summary and Brief. (DN 12; DN 13). The Commissioner filed a responsive Fact and Law Summary. (DN 15). Claimant filed a reply. (DN 16). The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 10).

### I. Background

Alston Z. ("Claimant") applied for supplemental security income benefits under Title XVI of the Social Security Act on August 12, 2022 and disability insurance benefits under Title II of the Social Security Act on September 1, 2022. (Transcript, hereinafter ("Tr."), 284-96). Claimant's

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. He is automatically substituted as the named defendant pursuant to Fed. R. Civ. P. 25(d).

applications alleged his disability began on June 1, 2021 due mental health issues. (*Id.*; Tr. 327,). The Commissioner denied Claimant's applications at the initial and reconsideration levels. (Tr. 161-75, 184-206).

At Claimant's request, Administrative Law Judge Anschuetz ("ALJ Anschuetz") conducted a hearing in Louisville, Kentucky on March 27, 2024. (Tr. 57). Claimant and his counsel appeared by telephone (Tr. 52-53). An impartial vocational expert also participated in the hearing. (*Id.*).

Claimant provided the following testimony. At the time of the hearing, he was 23 years old. (DN 62). He attended some college but does not intend to return and get a degree. (*Id.*). Because of financial issues, Claimant, his fiancé, and his son, moved into his mother's apartment with three of his siblings in June of 2022. (Tr. 67). Claimant tried working at a rental car agency for about a week in 2023 but had to quit because he couldn't focus or concentrate. (Tr. 63).

In Claimant's words, he is disabled due to the side effects of his medication. (Tr. 64-65). His medications cause fatigue, mood swings, intrusive thoughts (violent and sexual), trouble concentrating, delusions (worldly and religious), paranoia, tremors, and depression. (Tr. 65-66, 81). Claimant recounts "schizophrenia episodes" due to paranoia. (Tr. 70). He has panic attacks often, most recently at a grocery store with his fiancé. (Tr. 80).

He has a driver's license and drives two to three times a week to the gas station, to the park, but nowhere too far from his house. (Tr. 69). Claimant picks up his siblings from the bus stop one or two times a week. (Tr. 74-75). His mother and fiancé take care of his five-month-old son, but Claimant helps make his bottle, change his diaper, and plays with him or takes him on walks around the neighborhood. (Tr. 71). Claimant enjoys watching football and spending time with his son and fiancé, but most of the time he is "tired," "fatigued," and "sleeps a lot." (Tr. 72). He

sometimes helps with cleaning up, like washing the dishes or putting the trash outside the door. (Tr. 73).

ALJ Anschuetz issued an unfavorable decision on May 7, 2024. (Tr. 36-45). He applied the Commissioner's five-step evaluation process for determining whether a claimant is disabled, 20 C.F.R. § 404.1520, and found as follows. First, Claimant has not engaged in substantial gainful activity since June 1, 2021, his alleged onset date. (Tr. 14). Second, Claimant has the following severe impairments: Schizophrenia and post-traumatic stress disorder. (*Id.*). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 14-16). At the fourth step, ALJ Anschuetz determined Claimant has the residual functional capacity (RFC) to perform "medium work[,]" with the following limitations:

> Claimant is able to perform frequent stooping, crouching, kneeling, crawling, balancing and climbing or ramps and stairs and occasional climbing of ladders but is never able to work from scaffolds; the claimant can have no more than occasional exposure to rapidly moving parts; the claimant is never able to work in hazardous work environments or at unprotected heights; the claimant is able to perform tasks that require only simple decision-making; and the claimant is able to have occasional interaction with supervisors, co-workers, and the public.

(Tr. 16-35). Additionally at Step Four, ALJ Anschuetz found that Claimant has no past relevant work. (Tr. 36). Fifth and finally, considering the Claimant's age, education, work experience, and RFC, ALJ Anschuetz determined there were jobs that existed in the national economy that Claimant can perform. (*Id.*).

ALJ Anschuetz concluded Claimant was not under a disability, as defined in the Social Security Act, from June 1, 2021, through the date of the decision. (Tr. 37). Claimant appealed ALJ Anschuetz's decision. (Tr. 279-80). The Appeals Council declined review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Anschuetz's decision. (Tr. 1-

3). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified

4

"whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

III. Analysis

Claimant presents a single claim of error, relating to ALJ Anschuetz's analysis of his social functioning. (DN 12). At Step Three, in analyzing whether Claimant's mental impairments met or medically equaled a listed impairment, ALJ Anschuetz considered the four broad functional areas known as the "Paragraph B" criteria. (Tr. 14-16). ALJ Anschuetz determined Claimant had "moderate limitation" in three of the functional areas (understanding, remembering, or applying information; concentration, persistence, or maintaining pace; and adapting and managing oneself). (Tr. 15-16). As to the fourth functional area – interacting with others – ALJ Anschuetz determined Claimant had "marked limitation." (Tr. 15). ALJ Anschuetz elaborated that although there were allegations of significant difficulties in interacting with others, "the medical and other evidence shows that the claimant is, for the most part, able to interact with others in an independent, appropriate, and effective manner and weighs against finding greater than marked limitation in this domain." (*Id.*). ALJ Anschuetz then stated "[t]his finding of moderate limitation is supported by the partially persuasive opinion of a consultative mental examiner." (*Id.*).

Claimant takes issue with ALJ Anschuetz's inconsistent use of "moderate limitation" in the final sentence of the above analysis. (DN 12, at PageID # 1094). Because ALJ Anschuetz referred to Claimant's limitation in "interacting with others" as both moderate and marked in the same paragraph, Claimant believes the ALJ must clarify his contradictory statements. (*Id.*). The Commissioner responds that ALJ Anschuetz's use of the word "moderate" in the final sentence of his social-functioning analysis was "simply a typographical error." (DN 15, at PageID # 1104-05).

5

Review of ALJ Anschuetz's whole decision, the Commissioner explains, makes clear that the ALJ determined Claimant had a marked limitation in interacting with others. (*Id.*).

The Court agrees with the Commissioner. ALJ Anschuetz made a typographical error in using the word "moderate" to describe Claimant's social functioning. His decision proves this point. First, ALJ Anschuetz had previously referenced Claimant's social functioning as "markedly limited" twice in that paragraph. (*See* Tr. 15). Second, the consultative examiner, Ms. Freel, that ALJ Anschuetz references, in fact, determined Claimant had "marked limitations for maintaining effective social interaction with supervisors, coworkers, and the public on a consistent and independent basis." (Tr. 788).

Additionally, in evaluating the State Agency opinions in the RFC, ALJ Anschuetz found their moderate limitation in social interaction was not persuasive. (Tr. 34, 92, 101, 110, 135, 145, 155). Of note, ALJ Anschuetz explained that "the weight of the total medical and other evidence received at the hearing level viewed from a longitudinal perspective [wa]s more consistent with a marked limitation for the domain of interacting with others and a capacity for up to occasional interaction with supervisors, co-workers and the public." (Tr. 34). What is more, ALJ Anschuetz again referenced Claimant's "marked limitation for social interaction" in finding Plaintiff's therapist's opinion to be unpersuasive. (Tr. 34-35). He noted again that the evidence was "more consistent with no findings of greater than moderate functional limitations as suggested by [the SA consultants], subject to finding marked limitation for social interaction that is supported by Ms. Freel's opinion." (Tr. 35).

Despite admitting "it seems more likely than not that the ALJ decided [he] has marked social interaction limitations," Claimant argues that reaching this conclusion requires "impermissible guesswork, speculation, and *post-hoc* rationalization[.]" (DN 12, at PageID #

1093-94). But reviewing courts are not required to consider a single statement from the ALJ's decision in a vacuum. *See, e.g., Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (noting that the ALJ's entire decision must be considered); *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014) (finding that the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three). The Court's consideration of the ALJ's multiple statements that Claimant had marked limitations throughout the decision does not constitute impermissible guesswork or speculation. Nor does ALJ Anschuetz's mistaken use of the word "moderate" undermine the substance of his analysis or the conclusions he reached. *See Williams v. Comm'r of Soc. Sec.*, 227 F. App'x 463, 464 (6th Cir. 2007) ("The district court carefully considered this error and concluded that the mistaken reference . . . did not in any way underline the substance of the analysis or the conclusions reached by the ALJ."). No error stems from ALJ Anschuetz's misuse of the word "moderate," and no additional clarification is necessary.

Claimant argues that even assuming ALJ Anschuetz determined Claimant was markedly limited in social functioning, such a finding is inconsistent with his later RFC restriction that Claimant can occasionally interact with supervisors, coworkers, and the public. (DN 12, at PageID # 1095). "Occasional," Claimant explains, means occurring from very little up to 1/3 of the time. (*Id.*). Claimant believes ALJ Anschuetz did not provide a logical bridge or meaningful explanation for how an individual with marked social limitations can interact with supervisors, co-workers, and the public for up to 1/3 of the time. (*Id.*).

The Commissioner responds that ALJ Anschuetz's later RFC limitation of "occasional interaction with supervisors, coworkers, and the public" accommodated Claimant's marked limitations in that domain. (*Id.* at PageID # 1105). The Commissioner identifies three cases where courts have determined that marked limitations in social interaction are accounted for with

limitations to occasional interaction with others.[2] (DN 15, at PageID # 1107 (citing *Haggard v. Berryhill*, No. 17-cv-99, 2018 WL 6003862, at *8 (E.D. Tenn. Nov. 15, 2018); *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015); *Schulte v. Colvin*, No. 13-cv-1521, 2014 WL 1654129, at *5 (N.D. Ohio Apr. 24, 2014)).

No *per se* inconsistency exists between ALJ Anschuetz's Step Three finding that Claimant had marked limitations in social interaction and his RFC determination that Claimant is limited to occasional interaction with supervisors, co-workers, and the public. Marked limitations in paragraph B criteria are not synonymous with a specific functional restriction in the RFC. That is because Step Three and the RFC serve different functions. Step Three regulates a "narrow category of adjudicatory conduct." *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 649 (6th Cir. 2006) (en banc). It "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Id.* The RFC is a subsequent determination distinct from Step Three. *See Turbeville v. Colvin*, No. 1:12-CV-00061, 2014 WL 6605483, at *10 (M.D. Tenn. Nov. 19, 2014) ("[Step 3 and the RFC] are separate steps and a finding at one step does not necessarily equate to the same finding being made at a later step."). The RFC "requires a more detailed assessment by itemizing the various functions contained in the broad categories found in Paragraphs B and C." SSR 96-8p, 1996 WL 374184, at *4. Accordingly, an ALJ's determination that a claimant has marked limitations in the Paragraph B criteria at Step Three does not necessarily correlate to identical limitations in the RFC.

Moreover, the cases the Commissioner cited demonstrate that an RFC limitation of "occasional interaction" may accommodate a marked limitation in social interaction from Step

---

[2] Claimant had the opportunity in his reply brief to identify case law in support of the inherent inconsistency between marked social interactions limitations in the Paragraph B criteria and occasional social interactions with others in the workplace in the RFC, but he declined to do so. (*See* DN 16).

Three. *Reeves*, 618 F. App'x at 275 (finding ALJ accounted for marked limitations in his ability to relate to others by limiting plaintiff to only occasional interaction with the public); *Haggard*, 2018 WL 6003862, at *8 (finding plaintiff had "not demonstrated why an RFC of occasional interaction with coworkers and the public and direct, non-confrontational supervision, fail[ed] to accommodate [p]laintiff's marked limitation in social interactions."); *Shulte*, 2014 WL 1654129, at *5 ("The Court has no basis for finding that an individual with marked limitation in her ability to relate to others could not, nonetheless, *occasionally* do so."). The Court has also independently located several cases, including one from this District, rejecting the argument that a claimant cannot be both markedly limited in social interaction and be able to have occasional public/employee contact. *See Andrew H. v. Kijakazi*, No. 1:23-cv-00009-LLK, 2023 WL 4372713, at *5 (W.D. Ky. July 6, 2023) (finding argument "unpersuasive because it presupposes that it is inconsistent to find that a person has a 'marked' limitation in interacting with the public [] but to find the person can have 'occasional public/employee contact.'"); *Shinlever v. Berryhill*, No. 3:15-CV-371-CCS, 2017 WL 2937607, at *4-5 (E.D. Tenn. July 10, 2017) (disagreeing with the plaintiff's contention "that an ability to occasionally interact with others will always reflect a limitation in social functioning that is less than marked.").

Even though Paragraph B limitations do not automatically correlate to RFC limitations, the Claimant is correct that an ALJ is still tasked with providing an accurate and logical bridge between the evidence and his conclusions. *See Jeffery S. v. Comm'r of Soc. Sec.*, 6:24-CV-106-CHB, 2025 WL 2396570, at *4 (E.D. Ky. Aug. 18, 2025) ("If any material inconsistencies or ambiguities exist, the ALJ must explain how [they] were considered and resolved. Courts within the Sixth Circuit have interpreted this ruling to require that the ALJ must always build an accurate and logical bridge from the evidence to her conclusions."). ALJ Anschuetz did so here. His nearly twenty-page RFC

9

analysis detailed Claimant's subjective complaints, medication and alleged side effects, treatment history, third-party function reports, activities of daily living, and the medical opinions of record. (Tr. 16-35).

Much of the evidence ALJ Anschuetz discussed supports Claimant's ability to interact with others in the workplace occasionally. For instance, the ALJ noted that: Claimant reports living with his fiancée, son, mother, and three younger siblings in a four-bedroom apartment and reported a close relationship with his family (Tr. 25, 32); at times, Claimant reported talking with friends by phone, text, and Facetime video chat as a coping mechanism (Tr. 22, 27); Claimant reported at various times since his alleged onset date a range of daily activities that include going to church, shopping at grocery stores and convenience stores, playing basketball, going to the gym, eating at restaurants (Tr. 17, 20, 32); and his adult function report completed with his application for benefits stated that he gets along with authority figures well (Tr. 18). As Claimant pointed out, "occasional" for purposes of disability evaluation means occurring from very little up to 1/3 of the time. The evidence cited above constitutes substantial evidence that Claimant could sustain this level of interaction.

Claimant's citation to this Court's opinion in *Nicholas B. v. Commissioner of Social Security* does not move the needle. (DN 12, at PageID # 1095-95). In *Nicholas B.*, the ALJ determined the claimant had a moderate limitation in interacting with others at Step Three and could frequently interact with supervisors and occasionally interact with co-workers in the RFC. No. 3:24-CV-00169-CRS, 2025 WL 595176 (W.D. Ky. Feb. 24, 2025). The Court determined the ALJ failed to provide a logical bridge between the evidence of record and the claimant's ability to interact with supervisors and co-workers because the ALJ "cited to no evidence of record

10

demonstrating his ability to interact with others outside of supportive situations." *Id.* at *6-8. The evidence of claimant's isolation in that case was uncontradicted. *Id.*

Unlike in *Nicholas B.,* ALJ Anschuetz discussed evidence in the record demonstrating Claimant's interactions with immediate family, extended family, and friends. He also discussed evidence reflecting Claimant's voluntary social actions, like visiting the gym, eating at restaurants, shopping for food, vacationing, and visiting his fiancé's family. Claimant's interactions and activities are dissimilar to the claimant in *Nicholas B.*, who only left his house for infrequent doctor's appointments. And ALJ Anschuetz's thorough evaluation is dissimilar to the ALJ's evaluation in *Nicholas B.*

In a final attempt to demonstrate that no logical or accurate bridge exists, Claimant argues in his reply brief that the Commissioner has not and cannot reconcile the ALJ's limitation of occasional social interaction with Claimant's well documented inappropriate behavior with psychosis and agitation. (DN 16, at PageID # 1113). Claimant specifically references how his behavior is triggered by "being stared at, conflict/confrontation crowds, and loud noises" and "being around others, feeling disrespected, and loud noises/chaos." (*Id.* (citing Tr. 734-35)). The Commissioner's citation to interactions with his fiancé, small child, and close familial relatives, according to Claimant, does not prove his ability to tolerate social interaction in workplace settings. (*Id.*).

Contrary to Claimant's position, ALJ Anschuetz did not need to "reconcile" this evidence related to his psychosis and agitation. His decision thoroughly discussed all of the evidence in the record, including evidence demonstrating Claimant has some ability to interact with others and evidence demonstrating Claimant struggles with social interaction. ALJ Anschuetz based his decision on the totality of the record. And, again, his exhaustive analysis provides a logical bridge

11

between such evidence and his ultimate RFC limitations. His decision is supported by substantial evidence in the record.[3]

## IV. Order

Based on the above analysis, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Regina S. Edwards, Magistrate Judge
United States District Court

September 26, 2025

Copies: Counsel of Record

---

[3] Because the Court finds ALJ Anschuetz's limitation of Claimant to occasional interaction in the RFC is supported by substantial evidence in the record and does not result in error, the Court need not further address Claimant's arguments that his marked social interaction limitations were work-preclusive or that the ALJ would have formulated a more restrictive RFC had he properly assessed Claimant's social interactions. (*See* DN 12, at PageID # 1095-96).